**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GORDON BULLOCK,<br><br>        Plaintiff,<br><br>v.<br><br>BROCK SHEELA, *et al.*,<br><br>        Defendants. | Case No. 1:14-cv-00092-DAD-EPG (PC)<br><br>**FINDINGS AND RECOMMENDATIONS, THAT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED AND THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED IN PART AND DENIED IN PART**<br><br>(ECF Nos. 62, 78)<br><br>**OBJECTIONS DUE WITHIN TWENTY-ONE (21) DAYS** |

**I. BACKGROUND**

Gordon Bullock ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint commencing this action on December 24, 2013. (ECF No. 1).

This action now proceeds with Plaintiff's Fourth Amended Complaint for deliberate indifference to serious medical needs in violation of the Eighth Amendment against Defendants C. Rios and Brock Sheela, and for retaliation in violation of the First Amendment against Defendant Sheela. (ECF Nos. 25, 26).

1

On July 27, 2017, Brock Sheela and C. Rios ("Defendants") filed a motion for summary judgment on the ground that Plaintiff failed to exhaust his available administrative remedies before filing suit. (ECF No. 62). On August 7, 2017, Plaintiff filed an opposition to the motion for summary judgment. (ECF No. 66). On August 15, 2017, Defendants filed their reply. (ECF No. 67). On August 31, 2017, Plaintiff filed a sur-reply.[1] (ECF No. 69).

On January 16, 2018, Plaintiff moved for summary judgment, arguing that Defendants have admitted issues of material fact. (ECF No. 78). Defendants filed an opposition to the motion on February 6, 2018. (ECF No. 81).

The motions for summary judgment are now before the Court. After consideration of all the materials presented, as well as the applicable law, the Court will recommend that Plaintiff's motion for summary judgment be denied. The Court will also recommend that Defendants' motion for summary judgment be granted in part and denied in part, as there are genuine disputes of material fact regarding whether Plaintiff properly filed a grievance that prison officials failed to process. The Court will further recommend that Defendants be given an opportunity to request an evidentiary hearing on the disputed facts.

## II. LEGAL STANDARDS

### A. SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca* ("Albino II"), 747 F.3d 1162, 1172 (9th Cir. 2014) (*en banc*) ("If there is a genuine dispute about material facts, summary judgment will not be granted"). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not

---

[1] Defendants filed an objection to Plaintiff's filing of a sur-reply on September 8, 2017, arguing that it is not authorized by the Federal Rules of Civil Procedure or Local Rule 230. (ECF No. 70). On October 6, 2017, Plaintiff filed a motion to, in effect, submit a sur-reply. (ECF No. 74). On October 17, 2017, Defendants filed their opposition and requested that the sur-reply be stricken. (ECF No. 75). The Court granted Plaintiff's motion to submit the sur-reply, and denied Defendants' motion to strike. (ECF No. 77).

establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If a party moves for summary judgment on the basis that a material fact lacks any proof, the Court must determine whether a fair-minded fact-finder could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [fact-finder] could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

"Once the moving party meets its initial burden, the non-moving party must 'go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"" *Burch v. Regents of Univ. of Cal.*, 433 F.Supp.2d 1110, 1125 (E.D. Cal. 2006) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). "[C]onclusory allegations unsupported by factual data" are not enough to rebut a summary judgment motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989), citing *Angel v. Seattle-First Nat'l Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981).

In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties, but is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). In judging the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record . . . from which a reasonable inference . . . may be drawn";

the court need not entertain inferences that are unsupported by fact. *Celotex*, 477 U.S. at 330 n. 2 (quoting *In re Japanese Electronic Products Antitrust Litigation*, 723 F.2d 238, 258 (1983)).

**B. EXHAUSTION**

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

"The California prison grievance system has three levels of review; an inmate exhausts administrative remedies by obtaining a decision at each level." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (citing Cal. Code Regs. tit. 15, § 3084.1(b) (2011) & *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010)); s*ee also* Cal. Code Regs. tit. 15, § 3084.7(d)(3) ("The third level review constitutes the decision of the Secretary of the California Department of Corrections and Rehabilitation on an appeal, and shall be conducted by a designated representative under the supervision of the third level Appeals Chief or equivalent. The third level of review exhausts administrative remedies . . . .").

Prisoners are required to exhaust the available administrative remedies prior to filing suit. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002) (per curiam). "If, however, a plaintiff files an amended complaint adding new claims based on conduct that occurred after the filing of the initial complaint, the plaintiff need only show that the new claims were exhausted before tendering the amended complaint to the clerk for filing." *Akhtar v. Mesa*, 698 F.3d 1202, 1210 (9th Cir. 2012) (citing *Rhodes v. Robinson*, 621 F.3d 1002, 1007 (9th Cir. 2010).

The exhaustion requirement applies to all prisoner suits relating to prison life. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." *Booth v. Churner*, 532 U.S. 731, 736, 741 (2001); *Ross v. Blake*, 136 S.Ct. 1850, 1857, 1859 (2016).

4

An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). However, "a prisoner exhausts 'such administrative remedies as are available,' 42 U.S.C. § 1997e(a), under the PLRA despite failing to comply with a procedural rule if prison officials ignore [a] procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." *Reyes*, 810 F.3d at 658.

"Under the PLRA, a grievance 'suffices if it alerts the prison to the nature of the wrong for which redress is sought.' *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir.2010) (quoting *Griffin*, 557 F.3d at 1120). The grievance 'need not include legal terminology or legal theories,' because '[t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.' *Griffin*, 557 F.3d at 1120. The grievance process is only required to 'alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.'" *Reyes*, 810 F.3d at 659.

As discussed in *Ross*, there are no "special circumstances" exceptions to the exhaustion requirement. 136 S.Ct. at 1862. The one significant qualifier is that "the remedies must indeed be 'available' to the prisoner." *Id.* at 1856. The *Ross* Court described this qualification as follows:

> [A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. See 532 U.S., at 736, 738, 121 S.Ct. 1819. Suppose, for example, that a prison handbook directs inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions. The procedure is not then "capable of use" for the pertinent purpose. In *Booth* 's words: "[S]ome redress for a wrong is presupposed by the statute's requirement" of an "available" remedy; "where the relevant administrative procedure lacks authority to provide any relief," the inmate has "nothing to exhaust." *Id.,* at 736, and n. 4, 121 S.Ct. 1819. So too if administrative officials have apparent authority, but decline ever to exercise it. Once again: "[T]he modifier 'available' requires the possibility of some relief." *Id.,* at 738, 121 S.Ct. 1819. When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy.
>
> Next, an administrative scheme might be so opaque that it becomes,

> practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it. As the Solicitor General put the point: When rules are "so confusing that ... no reasonable prisoner can use them," then "they're no longer available." Tr. of Oral Arg. 23. That is a significantly higher bar than CRIPA established or the Fourth Circuit suggested: The procedures need not be sufficiently "plain" as to preclude any reasonable mistake or debate with respect to their meaning. See § 7(a), 94 Stat. 352; 787 F.3d, at 698–699; *supra,* at 1855, 1857 – 1859. When an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion. But when a remedy is, in Judge Carnes's phrasing, essentially "unknowable"—so that no ordinary prisoner can make sense of what it demands—then it is also unavailable. See *Goebert v. Lee County,* 510 F.3d 1312, 1323 (C.A.11 2007); *Turner v. Burnside,* 541 F.3d 1077, 1084 (C.A.11 2008) ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available"). Accordingly, exhaustion is not required.
>
> And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation. In *Woodford,* we recognized that officials might devise procedural systems (including the blind alleys and quagmires just discussed) in order to "trip[ ] up all but the most skillful prisoners." 548 U.S., at 102, 126 S.Ct. 2378. And appellate courts have addressed a variety of instances in which officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures. As all those courts have recognized, such interference with an inmate's pursuit of relief renders the administrative process unavailable. And then, once again, § 1997e(a) poses no bar.

*Id.* at 1859–60.

"When prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies." *Andres v. Marshall*, 867 F.3d 1076, 1079 (9th Cir. 2017).

In a summary judgment motion for failure to exhaust, the defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino II*, 747 F.3d at 1172. If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies

6

effectively unavailable to him." *Id.* However, "the ultimate burden of proof remains with the defendant." *Id.* "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166

If the Court concludes that Plaintiff has failed to exhaust as to some claims but not others, the proper remedy is dismissal of the claims barred by section 1997e(a). *Jones*, 549 U.S. at 223–24.

### III. PLAINTIFF'S FOURTH AMENDED COMPLAINT

Plaintiff alleges that from early August to late October 2013, while at Wasco State Prison, he was very sick. He was having chest, side, and lower back pains, was spitting blood, and was experiencing dizziness. He submitted Health Care Services Request Forms on September 3, 2013, September 12, 2013, September 20, 2013, September 24, 2013, October 8, 2013, October 16, 2013, and October 23, 2013. Most of the request slips were never answered, and Defendant Brock Sheela, a Family Nurse Practitioner and Plaintiff's primary care provider, refused to see him.

On October 29, 2013, Defendant Sheela called Plaintiff to the medical facility. Plaintiff had filed a grievance and medical request slip stating that the medical facility only treated white and Hispanic inmates. Sheela was angry about the grievance that Plaintiff had filed, and yelled at Plaintiff. Sheela did not examine Plaintiff, and sent Plaintiff back to his cell without medical treatment. Plaintiff alleges that because Sheela was angry about the grievance, Sheela falsified Plaintiff's weight and wrote that Plaintiff was faking illness. Plaintiff alleges Sheela did this even though Plaintiff was experiencing the following symptoms: difficulty standing, sweating, weight loss, loss of appetite, chest pains, inability to sleep for three days, cold sweats, and fast heartbeat.

The next day, Plaintiff was rushed to the high risk medical facility at Correctional Training Facility in Soledad, California ("Soledad"). Plaintiff alleges that he had to file more grievances and medical requests to receive treatment at Soledad because Defendant Sheela had written that Plaintiff was faking illness on October 29, 2013.

Plaintiff further alleges that he obtained his medical records and saw that it included signed refusals of treatment that he did not sign. Plaintiff alleges that Defendant C. Rios, a Registered Nurse, forged his signature on the refusals dated September 13, 2013 and October 18,

7

2013. Plaintiff contends Defendant Rios did this to cover up his complaints that the medical facility at Wasco State Prison was not treating black inmates.

Plaintiff alleges that he suffered a heart attack, and was diagnosed with Valley Fever and high blood pressure. Due to Defendants' deliberate indifference, Plaintiff's heart attack, high blood pressure, and Valley Fever went untreated and undiagnosed for five months, resulting in irreversible damage to Plaintiff's health.

## IV. ANALYSIS

To begin, the Court notes that Plaintiff failed to properly address Defendants' statement of undisputed facts. Accordingly, the Court will consider Defendants' assertions of fact as undisputed for purposes of this motion. Fed. R. Civ. P. 56(e)(2); Local Rule 142, 260(b).

### A. Eighth Amendment Deliberate Indifference Against Sheela and Rios

Defendants argue that Plaintiff failed to exhaust his administrative remedies regarding his deliberate indifference claim against Rios because the grievances submitted by Plaintiff did not alert personnel at Wasco State Prison to the nature of the wrong for which he was seeking redress. They contend that the basis of Plaintiff's claim against Rios is that she forged his name to documents indicating that he had refused treatment on September 13, 2013, and October 18, 2013, precluding him from being referred for medical care. The appeals that Plaintiff did submit, WSP HC 13045067 and WSP HC 13045211, alleged that Plaintiff had put in medical slips to nurses, but did not state that Rios had forged Plaintiff's signature on any documents.

Defendants also argue that Plaintiff failed to exhaust his administrative remedies regarding his deliberate indifference claim against Sheela. They contend that no grievance alleging deliberate indifference against Sheela went through the proper administrative procedure, and that a grievance purportedly submitted by Plaintiff on March 7, 2014, would have been untimely.

Initially, Plaintiff does not allege that he claimed deliberate indifference against Rios in WSP HC 13045067 or WSP HC 13045211. Plaintiff alleges that his claims against Defendants Rios and Sheela were described in a grievance filed on March 7, 2014, which was not answered by CDCR thereby making the grievance process unavailable to him. Specifically, plaintiff argues:

> In late Feb. or Early March, I filed [a grievance] because I found out few weeks prior, I had Valley Fever and recently suffered some kind of Heart Failure, this as 2014. This grievance requested monetary compensation for Deliberate Indifference causing pain and suffering damage to health and reprisal by Sheela because he refused me treatment and falsified weight after. . . . this time I included Rios in retalliation [sic] because medical record I atained [sic] show not only did Rios forge my signiture [sic] on refusal slips, Rios lied about me being see[sic] by medical . . . .

(ECF No. 66 at 3). Plaintiff testified at deposition that he recorded in his logbook that he had submitted a grievance requesting compensation for deliberate indifferent and retaliation by both Rios and Sheela on March 7, 2014, but never received a response. (Bullock Dep. 32:18-33:19). Plaintiff submitted the logbook to Defendants during his deposition. (Bullock Dep.12:24-13:21). The logbook states, "3-7-14; sent 602 requesting compensation for Sheela, Wasco Medical, Deliberate Indifference and Retalliation [sic] causing serious damages to health and pain and suffering." (Bullock Dep. Ex. B). Furthermore, Plaintiff testified that he timely submitted the grievance because he became aware of the harm caused by the deliberate indifference of Sheela and Rios on February 14, 2014. Specifically, Plaintiff testified that he was told on February 14, 2014 that he had been diagnosed with Valley Fever, and on December 2, 2014, that he had suffered a heart attack. (Bullock Dep. 63:22-64:2; 78: 1-8).

Defendants argue that Plaintiff was aware of high blood pressure and heart problems as early as December 2, 2013. They contend that Plaintiff alleges in his original complaint that he had been examined by a physician at Soledad on December 2, 2013, who informed him that he had high blood pressure and needed medication for his heart. They also contend that Plaintiff's medical record further demonstrates that he was diagnosed with Valley Fever on December 22, 2013.

However, Plaintiff's sworn testimony does not clearly indicate when he was informed that he had suffered the specific harms alleged in this case. In his original complaint filed on December 24, 2013, Plaintiff stated that on "12-2-13" he was informed by a doctor that he had high blood pressure and was put on medication for his heart. (ECF No. 1 at 2). Plaintiff first mentions that he was told that he had a heart attack and Valley Fever in the second amended complaint filed on May 29, 2015. Plaintiff stated, "Dr. later told me12-3-13 That I had a Heart

9

Attack 1 year ago . . . ." (ECF No. 16 at 3). Plaintiff later states, "seeing a doctor and (1-14-14) Dr. told me stop taking Ranitidine, I never had Upper Respitory [sic] Infection, I have Valley Fever." *Id.* at 4. In his third amended complaint filed August 20, 2015, Plaintiff reiterates this saying, "I didn't know I had [Valley Fever] until 1-14-14 when Dr. Medosaor Medoza called me in." (ECF No. 21 at 2.) Plaintiff also states, "12/3/14 and the doctor put me on E.K.G. Heart Monitor . . . then asked me if they told me that I had a heart attack." *Id.*

In his sur-reply, Plaintiff alleges:

> On 12-2-13, Bullock had Chrest [sic] Pains went to medical given a E.K.G. by R.N. who kept getting on the phone calling a doctor because he didn't know what he was doing, I asked him was anything wrong and he said (asked) If I had a heart attack . . . so I said I don't know, and the R.N. said something might be wrong but he's not sure, so Bullock could not at that time file a grievance not knowing if something was really wrong, . . . (until he as told by a doctor on 2-14-14 that knew what they were talking about) . . . .

(ECF No. 69 at 2.) Plaintiff reiterates this statement in his deposition testimony. (Bullock Dep. 77: 15-78:8). Plaintiff further testified at deposition that he was told of his Valley Fever diagnosis on February 14, 2014. (Bullock Dep. 81:10-22).

Drawing all reasonable inferences in the light most favorable to the nonmoving party, the Court is unable to determine from the record when Plaintiff knew or should have known that he had suffered specific harm due to the deliberate indifference of Sheela and Rios. As Plaintiff has submitted evidence that prison officials improperly failed to process his grievance related to the incidents alleged in this action, the Court finds that there are genuine disputes of material fact regarding whether Plaintiff properly filed a grievance that prison officials failed to process. Accordingly, Defendants' motion for summary judgment should be denied as to Plaintiff's claims of deliberate indifference.

### B. First Amendment Retaliation Against Sheela

Defendants argue that Plaintiff did not properly exhaust his retaliation claim against Sheela because Plaintiff did not submit a timely grievance. They contend that the retaliation claim consists of allegations that Sheela refused to treat Plaintiff and falsified Plaintiff's weight on October 29, 2013. As Plaintiff was aware on October 29, 2013, that his weight had been recorded

incorrectly and that he had not been examined by Sheela, he was required to submit a grievance concerning these issues within thirty days.

Defendants mischaracterize Plaintiff's allegations of retaliation against Sheela. Plaintiff claims that Defendant Sheela retaliated against him in three ways: (1) by falsifying Plaintiff's weight, (2) by refusing to treat Plaintiff, and (3) by writing that Plaintiff was faking his illness. Defendants establish that Plaintiff failed to exhaust his administrative remedies as to the first two retaliatory conducts allegedly taken by Sheela, but not as to the third.

Plaintiff undoubtedly knew on October 29, 2013, that he did not receive medical treatment from Sheela. In addition, Plaintiff testified at his deposition that he witnessed Sheela falsifying his weight on October 29, 2013, saying:

> He falsified my -- he lied in my face, falsified my weight right in front of me. I'm looking right at the scale, him and the nurse and they say, "170" something. And I know I ain't ate in days. I'm been sweating, I'm tired, ain't slept, I'm having chest pains in my side and everything else, my whole body is sore. So I'm looking at the scale like, "174?" It was only 165.

(Bullock Dep. at 84: 1- 8). Plaintiff does not allege, however, that he filed and exhausted a grievance within 30 days of October 29, 2013. Thus, the evidence submitted by Defendants establishes that Plaintiff failed to exhaust his administrative remedies with respect to the first and second alleged retaliatory conducts. Accordingly, Defendants' motion for summary judgment as to Plaintiff's claim that Sheela retaliated against him by falsifying his weight and refusing to treat him should be granted, and the claims dismissed.

Defendants failed to meet their burden with respect to the third alleged retaliatory conduct, however. Plaintiff testified at deposition that on October 29, 2013, he did not know what Defendant Sheela had written in his medical records, saying:

> All I could tell you is I don't know because I couldn't see that. I didn't know what they wrote until I got my medical record. . . . Like I told you once before, the only thing I could see is my weight because they said it out loud.

(Bullock Dep. at 126:4-22). Drawing all reasonable inferences in the light most favorable to the nonmoving party, the record before the Court does not establish that on October 29, 2013, Plaintiff knew or should have known that Sheela had written that Plaintiff was faking his illness.

11

Again, as Plaintiff has submitted evidence that prison officials improperly failed to process his grievances related to both his retaliation and deliberate indifference claims, the Court finds that there are genuine disputes of material facts regarding whether prison officials improperly failed to process Plaintiff's properly filed grievance. According, Defendant's motion for summary judgment as to Plaintiff's claim that Sheela retaliated against him by writing in his medical file that he was faking illness should be denied.

### V. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff argues that he is entitled to summary judgment because Defendants have admitted that he submitted many medical requests to see a doctor yet was never seen by his primary care provider. Plaintiff does not submit any admissible evidence in support of this contention. *See* Fed. R. Civ. P. 56; L. R. 260. Thus, Plaintiff has failed to meet his burden to establish that he is entitled to judgment as a matter of law, and his motion for summary judgment should be denied.

### VI. CONCLUSION AND RECOMMENDATIONS

The Court will recommend that Plaintiff's motion for summary judgment be denied, without prejudice, because he has failed to submit admissible evidence establishing that there are no genuine disputes as to any material fact. The Court will recommend that Defendants' motion for summary judgment be denied in part and granted in part. The Court finds that there are genuine disputes of material facts as to whether Plaintiff properly filed a grievance that prison officials failed to process. The Court will also recommend that Defendants be given the opportunity to request an evidentiary hearing.

Accordingly, based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment, (ECF No. 78), be DENIED;
2. Defendants' summary judgment motion for failure to exhaust administrative remedies, (ECF No. 62), be DENIED as to Plaintiff's deliberate indifference claims and to Plaintiff's claim that Sheela retaliated against him by writing in Plaintiff's medical file that he was faking illness;

3. Defendants' summary judgment motion for failure to exhaust administrative remedies, (ECF No. 62), be GRANTED as to Plaintiff's claim that Sheela retaliated against him by falsifying Plaintiff's weight and refusing to treat him; and

4. If these findings and recommendations are adopted, that Defendants be given twenty-one days from the date the order adopting is entered to request an evidentiary hearing on the issue of whether Plaintiff properly submitted a grievance that prison officials failed to process.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within twenty-one (21) days** after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **February 27, 2018**       /s/ Erica P. Grosjean
　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE