UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GORDON BULLOCK,<br><br>          Plaintiff,<br><br>v.<br><br>BROCK SHEELA, *et al.*,<br><br>          Defendants. | Case No. 1:14-cv-00092-DAD-EPG (PC)<br><br>**FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM BE DISMISSED PURSUANT TO RULE 41 AND THAT THIS ACTION BE DISMISSED FOR PLAINTIFF'S FAILURE TO EXHAUST HIS ADMINISTRATIVE REMEDIES**<br><br>(ECF No. 62)<br><br>**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS** |

### I. INTRODUCTION

Gordon Bullock ("Plaintiff"), a prisoner in the custody of California Department of Corrections and Rehabilitation ("CDCR"), is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. This action now proceeds on Plaintiff's claims of deliberate indifference to serious medical needs in violation of the Eighth Amendment against C. Rios and Brock Sheela ("Defendants") and of retaliation in violation of the First Amendment against Sheela. (ECF Nos. 25, 26).

On July 27, 2017, Defendants filed a motion for summary judgment, arguing that Plaintiff failed to exhaust his available administrative remedies before filing suit. (ECF No. 62). On

February 28, 2018, the Court issued findings and recommendations, recommending that Defendant's motion for summary judgment be granted in part and denied in part. (ECF No. 84). On April 4, 2018, United States District Judge Dale A. Drozd, adopted the findings and recommendations in full, and referred the case back to the undersigned United States Magistrate Judge to conduct an evidentiary hearing concerning whether Plaintiff failed to exhaust his administrative remedies prior to filing suit. (ECF No. 91).

On May 17, 2018, the Court conducted an evidentiary hearing. (ECF No. 105). Plaintiff appeared on his own behalf. *Id.* Counsel R. Lawrence Bragg appeared on behalf of Defendants. *Id.* Plaintiff and Defendants submitted their respective closing memoranda on July 13, 2018, and July 27, 2018. (ECF Nos. 112, 113).

After consideration of all the evidence presented and the applicable law, the Court recommends that Plaintiff's First Amendment retaliation claim be voluntarily dismissed pursuant to Federal Rule of Civil Procedure 41, and that this action be dismissed, in its entirety, for Plaintiff's failure to exhaust his available administrative remedies.

## II. BACKGROUND

Plaintiff filed the Complaint commencing this action on December 24, 2013. (ECF No. 1). On May 16, 2016, Plaintiff filed the operative complaint, his Fourth Amended Complaint. (ECF No. 25). On September 20, 2016, the Court screened the Fourth Amended Complaint, and found two cognizable causes of action: deliberate indifference to serious medical needs in violation of the Eighth Amendment against Rios and Sheela and retaliation in violation of the First Amendment against Sheela. (ECF No. 26).

### A. The Operative Complaint

In the operative complaint, Plaintiff alleges that from early August to late October 2013, while at Wasco State Prison (Wasco or "WSP"), he was very sick. He was having chest, side, and lower back pains, was spitting blood, and was experiencing dizziness. He submitted Health Care Services Request Forms on September 3, 2013, September 12, 2013, September 20, 2013, September 24, 2013, October 8, 2013, October 16, 2013, and October 23, 2013. Most of the

medical request forms were never answered, and Defendant Sheela, a family nurse practitioner and Plaintiff's primary care provider, refused to see him.

On October 29, 2013, Defendant Sheela called Plaintiff to the medical facility. Plaintiff had filed an appeal and medical request form stating that medical staff only treated white and Hispanic inmates. Sheela was angry about the appeal, and yelled at Plaintiff. Sheela did not examine Plaintiff, and sent Plaintiff back to his cell without medical treatment. Plaintiff also alleges that because Sheela was angry about the appeal, Sheela falsified Plaintiff's medical record by writing the incorrect weight and by writing that Plaintiff was faking his illness. Sheela did this even though Plaintiff was experiencing the following symptoms: difficulty standing, sweating, weight loss, loss of appetite, chest pain, inability to sleep for three days, cold sweats, and fast heartbeat.

The next day, Plaintiff was rushed to the high risk medical facility at Correctional Training Facility in Soledad, California ("CTF" or "Soledad"). Plaintiff had to file more appeals and medical request forms to receive treatment at Soledad because his medical record indicated that he was faking his illness.

Plaintiff also alleges that he obtained his medical record and saw that it included signed refusals of examination and/or treatment forms that he did not sign. Plaintiff alleges that Defendant Rios, a registered nurse, forged his signature on the refusals dated September 13, 2013 and October 18, 2013. Plaintiff alleges Rios did this to cover up his complaints about racial discrimnation.

Plaintiff also alleges that he suffered a heart attack and was diagnosed with high blood pressure and valley fever, also called coccidioidomycosis. Due to Defendants' deliberate indifference, Plaintiff's heart attack, high blood pressure, and valley fever went untreated and undiagnosed for five months, resulting in irreversible damage to Plaintiff's health.

**B.     Defendant's Motion for Summary Judgment**

On July 27, 2017, Defendants filed a motion for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies before filing suit. (ECF No. 62). On August 7, 2017, Plaintiff filed an opposition to the motion for summary judgment. (ECF No. 66). On

August 15, 2017, Defendants filed their reply. (ECF No. 67). On August 31, 2017, Plaintiff filed a sur-reply. (ECF No. 69).

In their motion, Defendants propounded two main arguments. First, Defendants argued that Plaintiff failed to allege that Rios had forged his signature in any appeal, including WSP HC 13045067 and WSP HC 13045211, in which Plaintiff complained about the lack of response from nurses to his medical request forms. Second, Defendants argued that Plaintiff failed to timely submit and exhaust any appeal alleging deliberate indifference or retaliation against Sheela.

In opposition, Plaintiff argued that he submitted an appeal complaining about Rios and Sheela's conduct as alleged in this action on March 7, 2014, and recorded the date in his notebook. CDCR failed to respond to the appeal, thereby making the grievance process unavailable to him. Plaintiff also argued that the appeal was timely filed because he became aware of the harm caused by the deliberate indifference of Sheela and Rios on February 14, 2014.

Defendants rebutted that it has no record of receiving any such appeal. Moreover, Defendants argued, the purported appeal would have been untimely because Plaintiff was aware of his diagnoses and the actions of Defendants more than thirty days prior to March 7, 2014. Specifically, Defendants argued that Plaintiff was aware of his diagnosis of high blood pressure and heart problems as early as December 2, 2013, and of his diagnosis of valley fever on December 22, 2013. Defendants also argued that Plaintiff was aware on October 29, 2013, that Sheela had incorrectly recorded his weight and had failed to examine him.

On February 28, 2018, the Court issued findings and recommendations, recommending that Defendant's motion for summary judgment be granted in part and denied in part. (ECF No. 84). The Court found that Plaintiff had failed to timely exhaust his administrative remedies with respect to his claim that Sheela retaliated against him by refusing to treat him and by falsifying his weight. The Court, however, found that there remained disputes of material fact concerning when Plaintiff became aware of his various diagnoses and whether Plaintiff timely submitted an appeal that prison officials failed to process. *Id.*

On April 4, 2018, District Judge Dale A. Drozd, adopted the findings and recommendations in full, denied in part and granted in part the motion for summary judgment, and referred the action back to the undersigned United States Magistrate Judge to conduct an evidentiary hearing on the issue of whether plaintiff properly submitted an inmate grievance that prison officials failed to process. (ECF No. 91).

### III. LEGAL STANDARD

#### A. Statutory Exhaustion Requirement

"The California prison grievance system has three levels of review; an inmate exhausts administrative remedies by obtaining a decision at each level." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (citing Cal. Code Regs. tit. 15, § 3084.1(b) (2011) & *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010)); *see also* Cal. Code Regs. tit. 15, § 3084.7(d)(3) ("The third level review constitutes the decision of the Secretary of the California Department of Corrections and Rehabilitation on an appeal, and shall be conducted by a designated representative under the supervision of the third level Appeals Chief or equivalent. The third level of review exhausts administrative remedies….").

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Prisoners are required to exhaust the available administrative remedies prior to filing suit. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002) (per curiam). The exhaustion requirement applies to all prisoner suits relating to prison life. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." *Booth v. Churner*, 532 U.S. 731, 736, 741 (2001); *Ross v. Blake*, 136 S.Ct. 1850, 1857, 1859 (2016). "Under the PLRA, a grievance 'suffices if it alerts the prison to the nature of the wrong for which redress is sought.' *Sapp v. Kimbrell*, 623 F.3d

813, 824 (9th Cir. 2010) (quoting *Griffin*, 557 F.3d at 1120).

As discussed in *Ross*, 136 S.Ct. at 1862, there are no "special circumstances" exceptions to the exhaustion requirement. The one significant qualifier is that "the remedies must indeed be 'available' to the prisoner." *Id.* at 1856. The *Ross* Court described this qualification as follows:

> [A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates.
> . . .
> Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use—*i.e.*, some mechanism exists to provide relief, but no ordinary prisoner can navigate it.
> . . .
> And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.... As all those courts have recognized, such interference with an inmate's pursuit of relief renders the administrative process unavailable. And then, once again, § 1997e(a) poses no bar.

*Id.* at 1859–60 (internal citation omitted).

"When prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies." *Andres v. Marshall*, 867 F.3d 1076, 1079 (9th Cir. 2017).

**B.  Evidentiary Hearing**

The failure to exhaust is an affirmative defense—the defendant bears the burden of raising and proving the absence of exhaustion. *Jones*, 549 U.S. at 216; *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014). The proper device for raising failure to exhaust is typically by motion for summary judgment under Rule 56. *Albino*, 747 F.3d at 1166-1169. The defendant's burden is to present probative evidence to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172. If material facts relevant to exhaustion are disputed, summary judgment should be denied and the disputed factual questions should be decided by the judge in an evidentiary hearing. *Id.* at 1170–71.

At the evidentiary hearing, the court may "inquire into the facts as they really exist," *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 188–90 (1936), and may "resolve any questions of credibility or fact," *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987). While parties may be expected to simply reiterate their positions as stated in their briefs, one of the purposes of an evidentiary hearing is to "enable [] the finder of fact to see the witness's physical reactions to questions, to assess the witness's demeanor, and to hear the tone of the witness's voice….'" *United States v. Mejia,* 69 F.3d 309, 315 (9th Cir. 1995). All of this assists the finder of fact in evaluating the witness' credibility. *Id.*

## IV. SUMMARY OF EVIDENCE PRESENTED AT EVIDENTIARY HEARING

Defendants submitted the following documents into evidence: Deposition Transcript of Plaintiff, Gordon Bullock, dated May 22, 2017, (Exhibit A); Plaintiff's notebook, (Exhibit B); Complaint dated December 24, 2013, (Exhibit C); Second Amended Complaint dated May 29, 2015, (Exhibit D); Third Amended Complaint dated August 20, 2015, (Exhibit E); Plaintiff's Objections to Findings and Recommendations dated March 22, 2018, (Exhibit G); Primary Provider Progress Notes dated February 14, 2014, (Exhibit H); Medical Progress Notes dated September 21, 2016, (Exhibit I); Primary Provider Progress Notes dated January 14, 2014, (Exhibit Q); and Health Care Appeal Tracking/Log Nos. WSP HC 13045067, WSP HC 13045211, CTF HC 13039795, CTF HC 14040758, CTF HC 14040740, and CTF HC 14041048, (Exhibits J - P). Defendant called the following witnesses: Plaintiff Gordon Bullock; Kelly Gonzalez, Health Care Appeals Coordinator, Wasco State Prison; Marty Votaw, Health Care Appeals Coordinator, Correctional Training Facility; and Joseph Chudy, M.D., retired Physician and Surgeon, Correctional Training Facility.

Plaintiff submitted the following documents into evidence: California Correctional Health Care Services Request Form dated October 23, 2013, (Exhibit R); Declaration of Brock Sheela in Opposition to Motion for Summary Judgment, (Exhibit S); Fourth Amended Complaint dated May 16, 2016, (Exhibit T); Primary Provider Progress Notes dated October 29, 2013, (Exhibit U); Declaration of C. Rios in Opposition to Motion for Summary Judgment, (Exhibit V); and Initial Health Screening Report dated October 31, 2013, (Exhibit W). Plaintiff testified

7

on his own behalf.

### A. Testimony of Plaintiff

Plaintiff testified that Defendant Rios was deliberately indifferent to his medical needs on October 15, 2013. Tr. 145:19-146:1. She also forged his signature on refusal of examination and/or treatment forms dated October 18, 2013 and October 23, 2013 or October 25, 2013. Tr. 146:7-148:4.

Plaintiff further testified that Defendant Sheela was deliberately indifferent to his medical needs on October 29, 2013. Tr. 163:3-25. Sheela also wrote in his medical progress notes that Plaintiff was faking illness. Tr. 164:8-23. Plaintiff believes Sheela was angry because Plaintiff had complained about racial discrimination by medical staff. Tr. 164:8-23.

Plaintiff testified that on February 14, 2014, he first discovered the adverse consequences of Sheela and Rios' deliberate indifference. Plaintiff testified that Dr. Mindoro told Plaintiff that he had valley fever and heart problems for the first time at the February 14 appointment. Plaintiff testified that Dr. Mindoro said, "Don't take the [Ranitidine] no more. You don't have upper respiratory infection. You got valley fever and you got a heart problem.... He didn't say a heart attack, but he said there's a heart problem ...." Tr. 167:1-13; 136:20-137:4; 192:10-15. When Plaintiff heard the diagnosis, he felt that Rios and Sheela were responsible. Tr. 107:23-108:8.

Plaintiff testified that on March 7, 2014, he filed an appeal regarding the deliberate indifference and retaliation against Rios and Sheela, which had occurred in October 2013. Tr. 99:23-100:3; 113:24-114:3; 158:14-159:9. Plaintiff concedes he did not file an appeal alleging deliberate indifference and retaliation by Rios and Sheela prior to March 7, 2014. Tr. 102:15-103:3. He does not have a copy of the appeal, but there is an entry in his notebook identifying the date he filed the appeal. Tr. 102:10-14; 160:10-22. The entry for March 7, 2014, states, "Sent 602 requesting compensation for Sheela, Wasco Medical, deliberate indifference and retaliation causing serious damages to health and pain and suffering." Tr. 118:11-119:4. He dropped the appeal in the appeal box at CTF. Tr. 119:23-25. He never received any documents back from the prison about the appeal. Tr. 160:14-17.

Even though the underlying events took place in October 2013, Plaintiff testified that he waited until March 7, 2014 to file an appeal because, "It's [CDCR] policy -- you cannot file a 602 -- I can show you other 602s I got where they, where they kicked them back where there's no damage. Unless, unless you got damages, they don't accept them. They clearly say that on the top of the 602." Tr. 169:17-24.

Plaintiff was confronted with contrary statements he made in earlier filings with this Court. In response, Plaintiff testified that he was mistaken when he wrote in his Third Amended Complaint, "I didn't know I had [valley fever] until 1/14/14 when Dr. Mandocer Mendoza called me in and told me to stop taking Ranitidine. You don't have an upper respiratory infection. You have valley fever." Tr. 120:18-121:1; 123:13-21. Plaintiff also testified that he was mistaken and had copied information from a prior complaint when he wrote, "(1/14/14) doctor told me stop taking Ranitidine. I never had upper respiratory infection. I have valley fever." Tr. 124:8-25; 125:25-126:6. In his original complaint, he also wrote "I put in lots of medial requests. Never saw doctor until 12/2/13 at Soledad where he informed me of high blood pressure and put on medication for my heart." Tr. 129:7-131:10. Plaintiff testified that all of these prior statements in court filings, which indicate he knew of his valley fever and heart condition more than thirty days before he claims to have filed an appeal, were made in error.

Plaintiff further testified that he became aware of what Rios and Sheela had written in his medical record "[a]round May, June, July of summer 2014." Tr. 165:8-16. Moreover, Plaintiff testified that he is not suing Sheela for retaliating against him by falsifying his medical record. When questioned by defense counsel, Plaintiff testified as follows:

> Q The question is, is there anything in your notebook that is Exhibit 2 [sic] that references a 602 that you filed against Sheela and/or Rios for –
> A I can --
> Q -- putting false entries in your medical records for --
> A No.
> Q -- out of retaliation? Is there anything --
> A No.
> Q Is there anything in your notebook that indicates that you did that?

9

> A No, sir. I never sued -- I'm not suing them for that. I've never said that, even though that, that's part of the facts of what they did to cause the damages --
> Q Okay.
> A -- and part of the retaliation that caused the damages, part of their deliberate indifference. That's -- it's, it's part of what they did, but I'm not suing for that.
> . . .
> Q So to clarify, Mr. Bullock, are you making a claim in this lawsuit that either Sheela or, or Nurse Rios put false information on your medical records for retaliation or for any other reason? Is that part of your claim?
> A Am I making a claim that they did that? Yes, I am. I'm claiming that they did that.
> Q Okay.
> A But I'm not, I'm not suing for that.
> Q What do you mean you're --
> A I think you can clearly see what I'm, what the lawsuit's about. But, yes, I'm claiming they did do that.
> Q All right.
> And then getting back to my other question, then, just so everything is clear.
> Did you ever -- does Exhibit B, your notebook, refer to a 602 that alleges that Sheela and Rios put false information in your medical records for retaliatory or any other purposes? Is there anything in Exhibit B that talks about that type of 602?
> A No.

Tr. 139: 23-140-14.

### B. Testimony of Kelly Gonzalez

Kelly Gonzalez testified that she is currently the Health Care Grievance Coordinator at WSP, and she is one of the custodians of records for health care appeals, including those filed at other institutions. Tr. 10:3-11:1. Ms. Gonzalez further testified that, in 2013 and 2014, there was an administrative appeal or administrative grievance process available to inmates at WSP. Tr. 12:18-21 (Tr. 46:11-24). Plaintiff filed six appeals in the relevant period. Tr. 15:12-15; 16:16-17:1. She explained in detail that none of the appeals received by the Appeals Office in the relevant period pertain to the issues or defendants in this action. Tr. 22:20-23:14; 28:15-29:3; 32:14-33:1; 35:22-36:4; 38:22-39:9; 41:16-42:15; 45:24-46:10.

\\\

### C. Testimony of Marty Votaw

Marty Votaw testified that she is the Health Care Appeals Coordinator for CTF, and is one of the custodians of record for health care appeals. Tr. 54:8-10; 55:13-56:10. She testified that in 2013 and 2014, if an inmate submitted an appeal at CTF concerning an occurrence at another prison facility, the inmate would be sent a rejection letter, directing him or her to file the appeal directly with the institution identified in the appeal, and a copy of the appeal to be resubmitted to the appropriate institution. Tr. 57:3-58:10. A copy of the rejection letter and appeal would be scanned into a system that maintains the inmate's appeal history. Tr. 58:12-24, 59:6-24, 60:2-4. Ms. Votaw further testified that personnel are not allowed to throw away appeals, and are disciplined if they are found guilty of such misconduct. Tr. 61:7-62:15.

### D. Testimony of Dr. Joseph Chudy

Defendants called Dr. Joseph Chudy, a retired physician who worked at CTF. Tr. 64:11-12; 65:19-66:4. Dr. Chudy testified that he is the physician that examined Plaintiff on February 14, 2014, and Exhibit H consists of a true copy of the progress notes from the appointment. Tr. 66:12-67:8; 68:4-7.

Contrary to Plaintiff's testimony, Dr. Chudy testified that he did not diagnose Plaintiff with valley fever or a heart condition on February 14, 2014. Rather, Dr. Chudy testified based on his notes that there had been an earlier diagnosis from another doctor one month prior.

Specifically, Dr. Chudy testified that, following standard practice in the medical field, he reviewed Plaintiff's medical chart prior to the appointment. Tr. 68:14-69:8. The medical chart included the progress notes of Dr. Mindoro dated January 14, 2014, which is marked as Exhibit Q. Tr. 77:7-78:1. On January 14, 2014, Dr. Mindoro had diagnosed Plaintiff with clinically improved valley fever. Tr. 69:12-19; 79:21-25; 80:1-10. Dr. Mindoro also informed Plaintiff of the diagnosis, and indicated this by placing a checkmark for "Patient able to verbalize understanding of assessment and plan" and "Lab/Study Results" in the "Patient Education" section in the progress notes. Tr. 80:10-16. Plaintiff's medical chart also included the results of an electrocardiogram ("EKG") administered on January 17, 2014. Tr. 76:22-77:5. Plaintiff's EKG results were normal. Tr. 70:3-71:23.

Dr. Chudy also performed a physical examination of Plaintiff during the appointment, and found that his cardiac and pulmonary function were normal. Tr. 72:9-15; 73: 4-5. He did not tell Plaintiff that Plaintiff had sustained a heart attack or heart failure, and the EKG did not indicate that Plaintiff had sustained a heart attack. Tr. 76:15-21; 77:2-5.

Dr. Chudy also testified that Plaintiff's medical record did not indicate that he was taking Ranitidine, and that Ranitidine, also known as Zantac, is for acid production in the stomach and is not a medication for the respiratory tract. Tr. 87:23-1, 88:12-15.

## V. FINDINGS OF FACT AND CONCLUSIONS OF LAW

Initially, Plaintiff has abandoned his First Amendment retaliation claim. In the operative complaint, Plaintiff alleges that Sheela falsified his medical record because Plaintiff complained about racial discrimination by medical staff at WSP. (ECF No. 25 at 3-5). However, at the evidentiary hearing, Plaintiff testified that he did not intend to sue Sheela for retaliation, stating:

> Q The question is, is there anything in your notebook that is Exhibit 2 [sic] that references a 602 that you filed against Sheela and/or Rios for –
> A I can --
> Q -- putting false entries in your medical records for --
> A No.
> Q -- out of retaliation? Is there anything --
> A No.
> Q Is there anything in your notebook that indicates that you did that?
> A No, sir. I never sued -- I'm not suing them for that. I've never said that, even though that, that's part of the facts of what they did to cause the damages --
> Q Okay.
> A -- and part of the retaliation that caused the damages, part of their deliberate indifference. That's -- it's, it's part of what they did, but I'm not suing for that.

Tr. 139: 23-140-14; 172:4-10.

Thus, Plaintiff's First Amendment retaliation claim should be dismissed. *See* Fed. R. Civ. P. 41 ("[A]n action may be dismissed at the plaintiff's request only by court order on terms that the court considers proper.").

In any event, the Court finds that the evidence establishes that Plaintiff failed to exhaust his administrative remedies as to all the claims in this action. It is undisputed that the CDCR has a policy in place for administrative grievances. *See* Cal. Code Regs. tit. 15, § 3084.1 *et seq.*; *see also Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) ("The California prison grievance system has three levels of review; an inmate exhausts administrative remedies by obtaining a decision at each level."). It is also undisputed that Plaintiff did not exhaust any appeal through the third level of review. Tr. 102:15-103:3; 160:14-17. Plaintiff conceded that none of the appeals identified by Ms. Gonzalez and Ms. Votaw pertain to the issues in this action, stating at the hearing, "[T]hese appeals are appeals for, different events [] they have absolutely nothing to do with what they did.... None of them [have] to do with this case." Tr. 43:23-45:11. Thus, the only remaining question is whether the administrative grievance process was "available" to Plaintiff.

Plaintiff testified that he submitted an appeal on March 7, 2014, although he had no copy of that appeal and never received a response from the appeals office. Tr. 99:23-100:3; 113:24-114:3; 158:14-159:9. However, the appeal was indisputably filed more than thirty days after Defendants' alleged deliberate indifference and retaliatory conduct. Plaintiff testified that Sheela and Rios retaliated against him and exhibited deliberate indifference towards him in October 2013. Tr. 145:19-146:22; 147:25-148:4; 164:8-23. Thus, even if Plaintiff submitted the appeal as he testified, it would be untimely under the regulations.

Moreover, regarding the retaliation claim, Plaintiff testified that he did not find out that Sheela had falsified his medical record until "[a]round May, June, July of summer 2014," after he had submitted the purported March 7, 2014 appeal. Tr. 165:8-16.

During the hearing, Plaintiff testified that his appeal was timely—even though filed more than thirty days after the incidents—because he was unable to submit an appeal until he had suffered some form of injury, and he only became aware of the adverse effects of Defendants' deliberate indifference on February 14, 2014, when Dr. Mindoro told him that he had valley fever and heart problems. Tr. 167:1-13; 136:20-137:4; 192:10-15.

However, Plaintiff's version of events is contradicted by his medical record and by his physician, Dr. Chudy. Plaintiff's medical record establishes that he was seen by a doctor on

13

February 14, 2014; but, he was seen by Dr. Chudy, not Dr. Mindoro. Tr. 66:12-67:8; 68:4-7; Ex. H. Contrary to Plaintiff's testimony, Dr. Chudy did not diagnose Plaintiff with valley fever or a heart condition. Tr. 76:15-21; 77:2-5. Rather, Dr. Chudy noted an earlier diagnosis of valley fever by Dr. Mindoro. Tr. 68:14-18; 76:22-77:5; 77:7-78:1; Exs. H, Q. And, on January 14, 2014, Dr. Mindoro informed Plaintiff that he had contracted valley fever. Tr. 80:1-16; Ex. Q. The testimony of Dr. Chudy also establishes that neither Dr. Chudy nor Dr. Mindoro told Plaintiff that he had a heart condition. Tr. 79:21-25; 76:15-21; 77:2-5. Thus, it appears that Plaintiff's purported appeal was filed more than thirty days after he learned of his valley fever diagnosis, and that there was no intervening diagnosis of a heart condition that would justify his late filing.

The Court observed Dr. Chudy's demeanor while testifying and found him to be credible. Furthermore, Dr. Chudy's testimony was corroborated by Plaintiff's medical record, and to some extent Plaintiff's own testimony. For example, both Plaintiff and Dr. Chudy identified Dr. Mindoro as the physician who diagnosed and informed Plaintiff that he had valley fever. Tr. 79:21-25; 167:1-13; 136:20-137:4; 192:10-15.

In contrast, Plaintiff's testimony was, at times, not credible. For example, Plaintiff testified that he was mistaken and had copied information from a prior complaint when he wrote in his Second Amended Complaint, "(**1/14/14**) doctor told me . . . I have valley fever." Tr. 124:8-25; 125:25-126:6; Ex. D (emphasis added). Plaintiff also testified that he simply wrote the incorrect date in his Third Amended Complaint, which states, "I didn't know I had [valley fever] until **1/14/14** when Dr. Medosa or Medoza called me in told me . . . you have Valley Fever, you had it for 3 to 31/2 months." Tr. 120:18-121:1; 123:13-21; Ex. E (emphasis added).

Plaintiff also testified that he believed he was put on medication for chest pain, not heart problems, in December 2013. Tr. 108:16-109:21. However, he also testified that in his original complaint, which was filed on December 23, 2013, he wrote "I put in lots of medial requests. Never saw doctor until 12/2/13 at Soledad where he informed me of high blood pressure and put on medication for my heart. . . . and now I have heart problems and high blood pressure." Tr. 129:7-131:10, Ex. C.

The Court finds that to the extent Plaintiff believed he had any heart problems, he knew

14

of such problems as early as December 2013. Furthermore, Plaintiff knew of his diagnosis of valley fever on January 14, 2014. Thus, his purported appeal filed more than thirty days later on March 7, 2014, was untimely. Accordingly, this action should be dismissed for Plaintiff's failure to exhaust his available administrative remedies.

Although the Court need not reach the issue, the Court also does not find credible Plaintiff's testimony that he submitted an appeal on March 7, 2014. There is no copy of that appeal. Plaintiff did not receive any response from that appeal. The only evidence to corroborate his assertion that he submitted the appeal is his own notebook, which he maintains for legal purposes. Tr. 115:15-116:3; 128:13-24. In fact, the first entries in the notebook specifically pertain to this case, and read as follows:

- Case No. 1:14-cv-00092-GSA
  GORDON BULLOCK VS WASCO STATE PRISON MEDICAL
  Magistrate Judge - GARY S. AUSTIN 1-22-14
- 3-7-14; Dr. Lamb put me on Fluconazole 200mg Tablets take two twice daily for Valley Fever.
- 3-7-14; Sent 602 requesting compensation for Sheela, Wasco Medical, deliberate indifference and retalliation [sic] causing serious damages to health and pain and suffering.

Tr. 118:11-119:4; Ex. B. The fact that the notation is made in the context of this case casts further doubt on whether Plaintiff truly submitted the appeal as indicated in this notebook. Additionally, Defendant presented substantial testimony that the prison properly processed appeals during this time, including many appeals from the Plaintiff himself. The fact that the prison has no record of receiving this appeal is strong evidence, given all the testimony, that Plaintiff did not submit the appeal.

VI.     **CONCLUSION AND RECOMMENDATIONS**

For the foregoing reasons, the Court finds that Plaintiff abandoned his claim of retaliation in violation of the First Amendment and failed to timely submit an appeal pertaining to his claims for both retaliation in violation of the First Amendment and deliberate indifference to medical needs in violation of the Eighth Amendment. Accordingly, the Court recommends that Plaintiff's

15

First Amendment retaliation claim be voluntarily dismissed pursuant to Federal Rule of Civil Procedure 41, and that this action be dismissed, in its entirety, for Plaintiff's failure to exhaust his available administrative remedies.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's claim of retaliation in violation of the First Amendment be dismissed pursuant to Federal Rule of Civil Procedure 41;
2. This action be dismissed, in its entirety, for Plaintiff's failure to exhaust his administrative remedies; and
3. The Clerk of the Court be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within fourteen (14) days** after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 29, 2018**

/s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE